UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ASANTE**, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 20-cv-601 (TSC) |
| **ALEX M. AZAR**, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs Asante, Asante Rogue Valley Medical Center, Asante Three Rivers Medical Center, Asante Ashland Community Hospital, Renown Regional Medical Center, Renown South Meadows Medical Center, Sky Lakes Medical Center, and Yuma Regional Medical Center (collectively, the "Hospitals"), located in Oregon, Nevada, and Arizona, bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, against the federal agencies and personnel responsible for administering Medicaid. The Hospitals claim that California's Medicaid plan impermissibly differentiates between in-state and out-of-state hospitals to make out-of-state hospitals like them ineligible to receive supplemental Medicaid payments. They argue this discriminatory scheme violates the Commerce Clause, Equal Protection Clause, and the Medicaid Act, and that Defendants' approval and funding of the scheme violate the APA. The Hospitals move for a preliminary injunction to prevent the federal government from making payments to California under the plan.[1]  (ECF No. 2.) Having reviewed the parties' filings, and

---

[1] The Hospitals also appear to seek a preliminary injunction preventing the Defendants from "approving . . . California's QAF program."  (ECF No. 2 at 2; ECF No. 2-1 ("Pls. Br.") at 2.) The Defendants have already approved the current QAF Program (effective July 1, 2019,

for the reasons set forth below, the court will DENY Plaintiffs' Motion for a Preliminary Injunction.

## I.   BACKGROUND

Medicaid, authorized under Title XIX of the Social Security Act, establishes a cooperative federal-state program that finances medical care for people who cannot afford medical services.  *See* 42 U.S.C. §§ 1396–1396v.  Defendants are the federal agencies and officials responsible for administering Medicaid: the Department of Health and Human Services ("HHS"); the Secretary of HHS, Alex Azar; the Centers for Medicare and Medicaid Services ("CMS"); and the CMS Administrator, Seema Verma.  (Compl. ¶¶ 11–14.)  The HHS Secretary is responsible for the program and has delegated its administration to the CMS, an agency within HHS.  *See* Centers for Medicare & Medicaid Services; Statement of Organization, Functions and Delegations of Authority; Reorganization Order, 66 Fed. Reg. 35,437 (2001).  States participating in Medicaid must submit plans to CMS for approval that detail financial eligibility criteria, covered medical services, and reimbursement methods and standards.  42 U.S.C. §§ 1396a(a), 1396b.  Once a state's plan is approved, the federal government provides financial assistance for the necessary and proper costs of administering its Medicaid program.  42 U.S.C. §§ 1396b, 1396d(b). States must also amend their plans to reflect changes in law or operation of its Medicaid program.  CMS is responsible for reviewing all amendments to state plans to "determine whether the plan continues to meet the requirements for approval." 42 CFR § 430.12(c)(2).

---

through December 31, 2021) (ECF No. 1 ("Compl.") ¶ 99), and the Hospitals do not address this element of relief in their briefing.  The court will therefore deny that request for relief.

2

California participates in the Medicaid program through Medi-Cal. *See* Cal. Welf. & Inst. Code § 14000, *et seq*. At issue here is Medi-Cal's method for paying certain hospitals supplemental Medicaid payments through their Quality Assurance Fee ("QAF") program. Under the program, California collects fees from certain hospitals, receives matching funds from the federal government, and disburses supplemental Medicaid payments to those hospitals from the total funds. (Compl. ¶¶ 52–55.) Under California's QAF program, certain in-state hospitals receive supplemental payments while out-of-state hospitals do not (*Id.* ¶¶ 54–56), despite the fact that out-of-state hospitals, particularly those near the California border, provide frequent and necessary services to Medi-Cal patients. (*Id.* ¶¶ 2–5.) In order for California to operate the QAF program, CMS must approve California's state plan amendments. (*Id.* ¶¶ 94–98.) On February 25, 2020, CMS approved California's state plan amendments for the current QAF program, which covers the period July 1, 2019, through December 31, 2021 ("2019 QAF Program"). (*Id.* ¶ 99.) The Hospitals have settled claims with California regarding the QAF program covering 2009 through June 30, 2019. (*Id.* ¶¶ 20–26.)

The Hospitals allege that the QAF program's differential treatment of in-state and out-of-state hospitals unlawfully discriminates against out-of-state hospitals. (*Id.* ¶¶ 74, 80–81.) The Hospitals assert three claims against the Defendants under the APA.[2] In Count One, they allege that "California's methodology for making QAF payments, as reflected in the California State Medicaid Plan, discriminates against interstate commerce and is unconstitutional under the Commerce Clause," and therefore CMS's approval violates the APA § 706(2)(A), (B). (Compl.

---

[2] The Hospitals first brought these claims on August 20, 2019. But CMS had not yet approved the 2019 QAF Program, and the court dismissed the action because there was no final agency action. *Asante v. Azar*, No. 19-cv-02512 (D.D.C. February 14, 2020).

¶¶ 102, 104.)  In Count Two, the Hospitals claim that "California's differential treatment of in-state and out-of-state hospitals under the QAF program, as reflected in the California State Medicaid Plan, bears no rational relationship to any legitimate state purpose and thus violates the Equal Protection Clause of the Fourteenth Amendment," and therefore agency approval also violates the APA.  (Compl. ¶¶ 106, 108.)  Finally, in Count Three, the Hospitals allege that "California does not provide supplemental QAF monies to the plaintiffs 'to the same extent' that it provides such funds to in-state hospitals" in violation of the Medicaid Act, and therefore agency approval again violates the APA.  (Compl. ¶¶ 111–113.)[3]  The Hospitals seek declaratory relief and an injunction barring Defendants from making supplemental payments to California for the QAF program and preventing CMS from approving California's state plan amendments that include the 2019 QAF program.  (Prayer for Relief ¶¶ 1–5.)

## II.   LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotation marks omitted).  A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citations and quotation marks omitted) (emphasis in original).  Courts consider four factors on a motion for a preliminary injunction: (1) the likelihood of plaintiff's success on the merits, (2) the threat of irreparable harm to the plaintiff absent an injunction, (3) the balance of equities, and (4) the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

---

[3] Count Four alleges a cause of action under the Declaratory Judgment Act.  (Compl. ¶¶ 114–18 (citing 28 U.S.C. §§ 2201, 2202).)  Declaratory relief, however, is not a freestanding cause of action, but rather a form of relief for the Hospitals' other claims.  *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011).

(2008).  The D.C. Circuit has traditionally evaluated claims for injunctive relief on a sliding scale, such that "a strong showing on one factor could make up for a weaker showing on another."  *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011).  It has been suggested, however, that a movant's showing regarding success on the merits "is an independent, free-standing requirement for a preliminary injunction."  *Id.* at 393 (quoting *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).  Under either approach, however, the movant must always show irreparable harm, and if a party cannot do so, the court may deny the motion for injunctive relief without considering the other factors.  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

### III.   ANALYSIS

#### A. <u>Irreparable Harm</u>

While "[t]he concept of irreparable harm does not readily lend itself to definition," *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007), Plaintiffs carry a "considerable burden" to establish irreparable harm.  *Power Mobility Coal. v. Leavitt*, 404 F.Supp.2d 190, 204 (D.D.C. 2005) (citing *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  The movant must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future."  *Wis. Gas Co.*, 758 F.2d at 674 (internal quotation marks and citation omitted).  The party seeking injunctive relief must prove that the purported injuries are "both certain and great," "actual and not theoretical," and imminent.  *Id.*  The movant must also "substantiate the claim" of irreparable harm and "show that the alleged harm will directly result from the action which the movant seeks to enjoin."  *Id.*  Finally, the harm claimed

must be "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). In general, economic loss is not irreparable harm "in and of itself." *Wis. Gas Co.*, 758 F.2d at 674. But economic losses can be sufficient if they are unrecoverable and threaten the existence of the business or, in the non-profit context, result in substantial reduction of services. *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014) (citing *Nat'l Mining Ass'n, v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011); *Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 29 (D.D.C. 1997)).

The Hospitals seek to enjoin the federal government from paying approximately $4 billion in supplemental Medicaid funds to California, which would prevent California from disbursing those funds to in-state hospitals. (Pls. Br. at 2; *see also* Compl. ¶ 7.) They contend they are entitled to approximately $15 million of the funds and would lose the opportunity to recover those funds without an injunction. (*Id.* at 37; *see also* Compl. ¶ 81.) The court finds, however, that the Hospitals have failed to show that this loss constitutes irreparable harm.

The alleged $15 million loss results from California's distribution of all QAF funds, both federal and state-raised, to in-state hospitals. Thus, the action that directly results in their loss is California's distribution of the funds. And the action Plaintiffs seek to enjoin—the federal payment—does not "directly result" in their $15 million loss. *See Wis. Gas Co.*, 758 F.2d at 674 (requiring the harm to "directly result" from the enjoined action). The loss is, at most, an indirect result of the $4 billion payment from the federal government to California. While the Hospitals concede that enjoining the federal payment will not change California's QAF program and entitle them to payments, they contend that it is "highly unlikely" that California would risk a $4 billion loss by continuing with the program. (ECF No. 22 "Pls. Reply" at 24.) This speculation cannot meet the standard for irreparable harm. Moreover, California is not a

6

defendant in this action and the court obviously has no power to compel a non-defendant to pay $15 million to the Hospitals. Thus, their loss would not be remedied by an injunction against the federal government.

The Hospitals argue that their irreparable harm argument is similar to the one made in *Texas Children's Hospital v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014). (Pls. Br. at 36–38.) In that case, the plaintiff hospitals sought a preliminary injunction against HHS and CMS to invalidate a new regulatory provision involving hospital Medicaid payments. *Id.* at 235. Had the provision gone into effect, the plaintiff hospitals would have been required to return the money already received. *Id.* at 232, 235. The court enjoined the federal defendants from enforcing the new provision, therefore preventing both the federal government and the states from recouping money already paid to the plaintiff hospitals. *See id.* at 244–45. Here, however, the Hospitals are not at risk of losing funds already paid. Indeed, the only payments the Hospitals have ever received for the QAF program were through settlements with California. (*See* Compl. ¶¶ 20–26.) Moreover, the injunction in *Texas Children's Hospital* directly remedied the harm because it stopped the recoupment and permitted the hospitals to retain the funds during the litigation. *See* 76 F. Supp. 3d at 244–46. In this case, an injunction halting the federal government's payments would not remedy the Hospitals' alleged $15 million loss because the injunction would only prevent the federal government from paying funds to California and would not result in any payment to the Hospitals.

Even were the injunction to remedy the alleged harm, the Hospitals, which are all non-profits, have failed to "adequately describe and quantify the level of harm." *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 333–34 (D.D.C. 2012). They argue that the loss of funds results in reduction in services and that they must provide Medicaid

services to Medi-Cal patients. (Pls. Br. at 38.) To be sure, the loss of funds may result in some reduction of services, but the Hospitals provide no specific facts (in the Complaint or in supporting declarations) about the effects of the $15 million loss on their operations. *Cf. Texas Children's Hosp.*, 76 F. Supp. at 243–44 (detailing the substantially reduced services due to the economic loss).

The Hospitals also argue the loss is unrecoverable "practically" because distribution of the funds to the in-state hospitals will leave no funds for out-of-state hospitals at the end of litigation.[4] (Pls. Br. at 37.) But the Hospitals do not dispute Defendants' point that if the court sets aside California's QAF program, the state would have to return the matching federal funds to the federal government. (*See* Defs. Br. at 9 (citing 42 C.F.R. §§ 430.40, 430.42).) Therefore, the distributed funds are not unrecoverable.

Accordingly, the Hospitals cannot meet their burden to show irreparable harm.

**B. Other Factors**

The court need not address the other preliminary injunction factors in light of the Hospitals' failure to show irreparable harm. *See CityFed Financial Corp.*, 58 F.3d at 747. Nonetheless, it will address briefly the three remaining factors because they support its finding that a preliminary injunction is unwarranted. As to the balance of equities and public interest, those factors weigh against an injunction. The Hospitals seek to enjoin $4 billion in federal funds that would otherwise be disbursed to California hospitals during the nationwide emergency

---

[4] Plaintiffs also contend their losses are unrecoverable from California because the Eleventh Amendment bars suit against California in federal court and a California statute prohibits a judgment in favor of out-of-state hospitals under the QAF program. Defendants do not appear to contest this argument, (*See generally* ECF No. 21 ("Defs. Br.")), and the court therefore treats it as conceded.

caused by the COVID-19 virus. While the Hospitals share in this stress to medical institutions due to the pandemic, the court declines to disrupt funding to California hospitals during this national emergency. In addition, given the uncertainty of the "sliding scale" approach in this Circuit after *Winter*, the court will not opine on whether the Hospitals have shown a likelihood of success on the merits, except to say that it would not have tipped the balance either way. In sum, not only have the Hospitals not shown irreparable harm, but none of the remaining factors swing in their favor.

## IV.   CONCLUSION

For the reasons stated, the court will DENY Plaintiffs' motion for preliminary injunction. A corresponding Order will issue separately.

Date: April 21, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge